**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS,**
**HOUSTON DIVISION**

| | |
|---|---|
| LOUIS SCARANTINO, Individually and On Behalf of All Others Similarly Situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| | ) Case No. _____ |
| v. | )<br>) JURY TRIAL DEMANDED |
| CALPINE CORPORATION, FRANK CASSIDY, JOHN B. HILL III, LAURIE BRLAS, JACK A. FUSCO, MICHAEL W. HOFFMAN, DAVID C. MERRITT, W. BENJAMIN MORELAND, ROBERT A. MOSBACHER JR., DENISE M. O'LEARY, VOLT PARENT, LP, VOLT MERGER SUB, INC., and ENERGY CAPITAL PARTNERS III, LLC, | )<br>) CLASS ACTION<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on August 18, 2017 (the "Proposed Transaction"), pursuant to which Calpine Corporation ("Calpine" or the "Company") will be acquired by Volt Parent, LP ("Parent") and its wholly-owned subsidiary, Volt Merger Sub, Inc. ("Merger Sub"), which were formed by, and are affiliates of, Energy Capital Partners III, LLC ("ECP," and together with Parent and Merger Sub, "Energy Capital Partners") and its affiliated funds.

2. On August 17, 2017, Calpine's Board of Directors (the "Board" or "Individual

Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Parent and Merger Sub.  Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by Calpine's stockholders, Merger Sub will merge with and into Calpine, with Calpine continuing as a subsidiary of Parent, and shareholders of Calpine will receive $15.25 in cash for each share of Calpine common stock they own.

3.  On October 19, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.  The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.  This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.  Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Calpine common stock.

9.      Defendant Calpine is a Delaware corporation and maintains its principal executive offices at 717 Texas Avenue, Suite 1000, Houston, Texas 77002.  Calpine's common stock is traded on the NYSE under the ticker symbol "CPN."

10.     Defendant Frank Cassidy ("Cassidy") has served as a director of Calpine since January 2008 and as Chairman of the Board since May 2016.

11.     Defendant John B. (Thad) Hill III ("Hill") has served as a director, President, and Chief Executive Officer ("CEO") of Calpine since May 2014.  Hill previously served as Executive Vice President and Chief Commercial Officer of Calpine from September 2008 to May 2014.

12.     Defendant Laurie Brlas ("Brlas") has served as a director of Calpine since August 2016.

13.     Defendant Jack A. Fusco ("Fusco") has served as a director of Calpine since August 2008, and previously served as Executive Chairman of the Board from May 2014 to May 2016.

14.     Defendant Michael W. Hoffman ("Hoffman") has served as a director of Calpine since May 2013.

15.     Defendant David C. Merritt ("Merritt") has served as a director of Calpine since February 2006.

16.     Defendant W. Benjamin Moreland ("Moreland") has served as a director of Calpine since January 2008.

17. Defendant Robert A. Mosbacher, Jr. ("Mosbacher") has served as a director of Calpine since February 2009.

18. Defendant Denise M. O'Leary ("O'Leary") has served as a director of Calpine since January 2008.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20. Defendant ECP, together with its affiliated funds, is a private equity firm focused on investing primarily in North America's energy infrastructure. ECP controls and formed Parent and Merger Sub for the purpose of entering into the Merger Agreement and completing the Proposed Transaction.

21. Defendant Parent is a Delaware limited partnership, an affiliate of ECP, and a party to the Merger Agreement.

22. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, an affiliate of ECP, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action as a class action on behalf of itself and the other public stockholders of Calpine (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24. This action is properly maintainable as a class action.

25. The Class is so numerous that joinder of all members is impracticable. As of July 24, 2017, there were approximately 360,670,156 shares of Calpine common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26. Questions of law and fact are common to the Class, including, among others: (i)

whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company*

30. Calpine is a premier power generation company with 80 power plants primarily in the United States. The Company sells the power and related services it produces to its wholesale customers who include commercial and industrial end-users, state and regional wholesale market operators, and its retail affiliates who serve retail customers. Calpine also purchases primarily

natural gas and some fuel oil as fuel for its power plants and engages in related natural gas transportation and storage transactions.

31. The Company is one of the largest power generators in the U.S. measured by power produced. Calpine owns and operates primarily natural gas-fired and geothermal power plants in North America and has a significant presence in major competitive wholesale power markets in California, Texas, and the Northeast and Mid-Atlantic regions of the U.S.

32. Calpine's portfolio is primarily comprised of two types of power generation technologies: natural gas-fired combustion turbines, which are primarily efficient combined-cycle plants, and renewable geothermal conventional steam turbines. The Company is among the world's largest owners and operators of industrial gas turbines, as well as cogeneration power plants. Its Geysers Assets located in northern California represent the largest geothermal power generation portfolio in the U.S., as well as the largest single producing power generation asset of all renewable energy in California.

33. Since early 2017, the Company's portfolio, including partnership interests, consisted of 80 power plants, including one under construction, with an aggregate current generation capacity of 25,908 MW and 828 MW under construction. Inclusive of its power generation portfolio and retail sales platforms, Calpine served customers in 25 states in the U.S. and in Canada and Mexico. The Company's fleet, including projects under construction, consists of 65 natural gas-fired combustion turbine-based plants, one fuel oil-fired steam-based plant, 13 geothermal steam turbine-based plants, and one photovoltaic solar plant.

34. Calpine has also expanded its retail platform with the acquisitions of Champion Energy in 2015, Calpine Solutions in late 2016, and North American Power in early 2017.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

35. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

36. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

37. The Proxy Statement omits material information regarding Calpine's financial projections that were used in the valuation analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Lazard Frères & Co. LLC ("Lazard"). The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

38. The Proxy Statement indicates that, in performing its valuation analyses, Lazard excluded the value of Calpine's net operating loss carryforwards ("NOLs") from Calpine's projected cash flows and enterprise value-to-EBITDA multiples. The Proxy Statement, however, fails to (but must) disclose the Company's current and projected NOLs so that stockholders can assess the reliability of Lazard's analyses and make necessary adjustments to incorporate the value of the NOLs if they deem it appropriate.

39. Further, although the defendants provide a reconciliation of certain non-GAAP (generally accepted accounting principles) metrics (including Commodity Margin, Adjusted EBITDA, *Adjusted* Unlevered Free Cash Flow, and *Adjusted* Free Cash Flow) pursuant to Regulation G, defendants failed to provide stockholders with the necessary line item projections or reconciliation of the non-GAAP projections that Lazard actually used in its Discounted Cash

Flow Analyses, including Unlevered Free Cash Flows and Levered Free Cash Flows for the June 2017 Projections and the Updated February 2017 Marketing Projections.

40. To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP. Indeed, defendants tacitly acknowledge this in the Proxy Statement by providing a Regulation G reconciliation of Commodity Margin, Adjusted EBITDA, Adjusted Unlevered Free Cash Flow, and Adjusted Free Cash Flow. However, the Adjusted Unlevered Free Cash Flow and Adjusted Free Cash Flow non-GAAP projections that defendants reconciled in the Proxy Statement are different from the projections that Lazard actually used in its Discounted Cash Flow Analyses. As such, stockholders are entitled to line item projections or reconciliation of the Unlevered Free Cash Flows and Levered Free Cash Flows for the June 2017 Projections and the Updated February 2017 Marketing Projections that were used in Lazard's analyses.

41. Further, with respect to the Company's Levered Free Cash Flows in the Updated February 2017 Marketing Projections, the defendants fail to disclose management's basis for substantially increasing the estimated debt paydown and associated fees for years 2020 and 2021 compared to the Levered Free Cash Flows in the June 2017 Projections.

42. The Proxy Statement also fails to disclose material information relating to Lazard's valuation analyses, which the Board reviewed and relied upon in approving the Proposed Transaction. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

43. Lazard performed two Discounted Cash Flow Analyses of Calpine: one using the Company's June 2017 Projections and one using the Updated February 2017 Marketing Projections. The Proxy Statement, however, fails to disclose the following in connection with each of those analyses: (i) a reconciliation of the Company's the Unlevered Free Cash Flows and Levered Free Cash Flows; (ii) the reason Lazard deemed it appropriate to perform a Discounted Cash Flow Analysis of Calpine using the Company's levered free cash flows; (iii) the Company's current and projected NOLs as used in the analyses; (iv) the actual inputs and assumptions underlying the three different discount rate ranges selected by Lazard (*i.e.*, the discount rates applied to the Company's unlevered free cash flows, levered free cash flows, and NOLs); (v) the reason Lazard excluded the trading multiples of Vistra Energy Corp. in determining what terminal year multiples to apply to Calpine; (vi) the individual implied price per share ranges that resulted from each of Lazard's analyses using the Company's Unlevered Free Cash Flows and Levered Free Cash Flows (rather than an average of the two analyses); and (vii) the perpetuity growth rate ranges implied by each of Lazard's analyses.

44. With respect to Lazard's Selected Public Company Analysis, the Proxy Statement fails to disclose which of the disclosed multiples correspond with each of the selected companies. This information is material in light of the fact that Lazard excluded the trading multiples of Vistra Energy Corp. in determining what terminal year multiples to apply to Calpine, thus suggesting that Lazard may not have viewed Vistra Energy Corp. as truly comparable to the Company.

45. Also with respect to Lazard's Selected Public Company Analysis, the Proxy Statement indicates that Lazard adjusted the selected companies' enterprise value-to-EBITDA multiples to exclude each company's NOLs. The Proxy Statement must disclose Lazard's

9

reasons for doing so, and must disclose each of the selected company's true enterprise value-to-EBITDA multiples without excluding NOLs. Stockholders are entitled to this information so that they can assess for themselves the reliability of Lazard's analyses.

46. With respect to Lazard's Illustrative Discounted Future Stock Price Analysis, the Proxy Statement fails to disclose: (i) Lazard's basis for selecting terminal year enterprise value-to-EBITDA multiples of 7.25x to 8.25x, and the reason they differ from the terminal year multiples applied in Lazard's Discounted Cash Flow Analyses; (ii) the Company's current and projected NOLs as used in the analyses; (iii) the actual inputs and assumptions underlying the two different discount rate ranges selected by Lazard; and (iv) the perpetuity growth rate ranges implied by Lazard's analysis.

47. With respect to Lazard's Selected Precedent Transactions Multiple Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the transactions observed by Lazard in its analysis.

48. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Opinion of Calpine's Financial Advisor;" and (ii) "Certain Company Projections."

49. The Proxy Statement omits material information relating to potential conflicts of interest of Lazard.

50. Specifically, the Proxy Statement is completely silent as to whether Lazard has provided any financial or advisory services to either Calpine, Energy Capital Partners, or their affiliates in the past, and if so, the nature and timing of those services, as well as the amount of compensation Lazard earned in connection with those services. Notably, the Proxy Statement indicates that the Board engaged Lazard based on, among other things, "its familiarity with the

business of Calpine." Further, the Proxy Statement states that, on August 16, 2017, the "Calpine Board discussed certain relationships with Lazard and various participants in the strategic alternatives review process of which the Calpine Board was previously made aware prior to this meeting and the May 9, 2017 meeting of the Calpine Board and determined that such relationships were not material to the Calpine Board's evaluation of strategic alternatives."

51. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives. Stockholders are entitled to the full disclosure of potential conflicts of interest, regardless of their magnitude, so that they can assess for themselves whether, and to what extent, the potential conflicts may impact the banker's valuation analyses or support for the transaction.

52. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Opinion of Calpine's Financial Advisor;" and (ii) "Background of the Merger."

53. The Proxy Statement also omits material information relating to potential conflicts of interest of Calpine's executive officers and directors.

54. The Proxy Statement states that, on May 31, 2017, the Board met and discussed with inside and outside counsel "certain existing and prior relationships of employees of Calpine" with Energy Capital Partners. The Proxy Statement, however, fails to disclose the details of these existing and prior relationships between Calpine employees and Energy Capital Partners, including, among other things, the identity of the employees and the nature of the relationships.

55. Further, the Proxy Statement states that Calpine's outside counsel informed the

11

Board that it should agree on a transaction price with Energy Capital Partners "before permitting Calpine's management to engage in any discussion with Energy Capital Partners regarding compensation arrangements." The Proxy Statement, however, fails to disclose whether Energy Capital Partners ever informed any Company representatives that Energy Capital Partners was interested in retaining Company management following the close of the Proposed Transaction. If that is the case, the Proxy Statement must disclose the details and timing of those post-merger employment overtures, regardless of whether they resulted in a formal agreement or negotiations.

56. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

57. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Interests of Certain Persons in the Merger;" and (ii) "Background of the Merger."

58. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Calpine's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Calpine**

59. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

60. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material

facts necessary to make the statements therein not materially false or misleading. Calpine is liable as the issuer of these statements.

62. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

62. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

63. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

64. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

65. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

66. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Energy Capital Partners

67. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

68. The Individual Defendants and Energy Capital Partners acted as controlling

13

persons of Calpine within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Calpine and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

69. Each of the Individual Defendants and Energy Capital Partners was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

70. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

71. Energy Capital Partners also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

72. By virtue of the foregoing, the Individual Defendants and Energy Capital Partners violated Section 20(a) of the 1934 Act.

73. As set forth above, the Individual Defendants and Energy Capital Partners had the ability to exercise control over and did control a person or persons who have each violated

Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: October 26, 2017

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Telephone: (302) 295-5310
Facsimile: (302) 654-7530

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305

**KENDALL LAW GROUP, PLLC**

By: *Joe Kendall*
Joe Kendall
Texas Bar No. 11260700
jkendall@kendalllawgroup.com
Jamie J. McKey
Texas Bar No. 24045262
jmckey@kendalllawgroup.com
3232 McKinney Avenue, Suite 700
Dallas, TX 75204
Telephone: (214) 744-3000
Facsimile: (214) 744-3015

*Attorneys for Plaintiff*